IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LEWIS MELVIN STANTON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Civil Action No. 07 - 56 |
| v. | ) District Judge Nora Barry Fischer |
| | ) Magistrate Judge Lisa Pupo Lenihan |
| THE COUNTY OF ALLEGHENY; ET AL., | ) |
| | ) |
| | ) |
| Defendants. | ) |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

### I. RECOMMENDATION

It is respectfully recommended that Defendants' Motion for Judgment on the Pleadings (doc. no. 20) be granted.

### II. REPORT

Plaintiff (Lewis Stanton), through his attorneys, has commenced this action under 42 U.S.C. § 1983. Defendants have filed a Motion for Judgment on the Pleadings. For the reasons that follow, Defendants' Motion should be granted.

#### A. Standard of Review

A motion for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure is treated under the same standard as a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Regalbuto v. City of Philadelphia, 937 F.Supp. 374, 376-77 (E.D.Pa.1995), *aff'd*, 91 F.3d 125 (3d Cir. 1996), *cert. denied*, 519 U.S. 982 (1996). As the United States Supreme Court recently held in Bell Atlantic Corp. v.Twombly, 127 S. Ct. 1955 (May 21, 2007), a complaint must be dismissed pursuant to Fed. R. Civ. P. 12 (b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Id*. at 1974 (rejecting the

traditional 12 (b)(6) standard set forth in Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). The court must accept as true all allegations of the Complaint and all reasonable factual inferences must be viewed in the light most favorable to plaintiff. Angelastro v. Prudential-Bache Sec., Inc., 764 F.2d 939, 944 (3d Cir. 1985). The Court, however, need not accept inferences drawn by plaintiff if they are unsupported by the facts as set forth in the complaint. *See* Cal. Pub. Employee Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004) (citing Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997)). Nor must the court accept legal conclusions set forth as factual allegations. Twombly, 127 S. Ct. at 1965 (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)). "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.* (citing 5 C. Wright & A Miller, *Federal Practice & Procedure* § 1216, pp. 235-36 (3d ed. 2004)). Although the United States Supreme Court does "not require heightened fact pleading of specifics, [the Court does require] enough facts to state a claim to relief that is plausible on its face." *Id*. at 1974.

Courts generally may consider the allegations of the complaint, attached exhibits, and matters of public record in deciding motions to dismiss. Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993) (citations omitted). Factual allegations within documents described or identified in the complaint may also be considered if the plaintiff's claims are based upon those documents. *Id*. A district court may consider these documents without converting a motion to dismiss into a motion for summary judgment. In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).

### B. Plaintiff's Allegations

On November 7th 1990, Plaintiff entered a guilty plea to three (3) counts of statutory rape, one (1) count of criminal attempt and one (1) count of corruption of minors, and one (1) count

of indecent assault without consent and was sentenced to a period of probation of ten (10) years effective November 7, 1990. On or about August 24, 1999, Plaintiff was arrested and charged with driving under the influence of alcohol, driving with blood alcohol level greater than .10% or greater, violation of traffic control signals, and driving while his operating privileges were suspended or revoked. On March 1, 2000, Plaintiff entered a guilty plea before the Honorable Donald E. Machen, to driving under the influence of alcohol, driving with blood alcohol level greater than .10% or greater, violation of traffic control signals, and driving while his operating privileges were suspended or revoked and was sentenced to a period of thirty (30) days of incarceration with respect to the charge of DUI, and ninety (90) days of consecutive incarceration with respect to the violation 75 §1543§§B, in the Allegheny County Jail (Plaintiff's Complaint, Exhibit A, p.2).

On February 15th 2005, Plaintiff Stanton was arrested as a result of probation violations, including a new attributable charge, and was detained in the Allegheny County Jail. On March 10th 2005, Judge Machen re-sentenced Plaintiff, as a result of the probation violation, to a period of incarceration of one (1) year less one (1) day to two (2) years less two (2) days in the Allegheny County Jail with permission to be housed in alternative housing. Plaintiff's Complaint, Exhibit B. On April 5th 2005, Plaintiff Stanton was transferred from the Allegheny County Jail to the Renewal Center, an alternative housing facility. Shortly thereafter, Defendants Mistick and Grogan requested that the Sheriff of Allegheny County remove Plaintiff Stanton from the Renewal Center. Thereafter, Plaintiff Stanton filed with Judge Machen a Petition To Permit Defendant To Serve The Remainder of his Sentence on House Arrest with Work Release. Judge Machen denied said Petition but issued an Order of Court permitting Plaintiff to serve the remainder of his sentence at the Renewal Center. Plaintiff's Exhibit C. When Plaintiff was not transferred to the Renewal

Center, he filed a Rule To Show Cause why the Defendants should not be held in contempt for failure to comply with the July 21, 2005 Order. Plaintiff's Exhibit D. On August 3rd 2005 a contempt hearing was held before the Judge Machen during which Defendants agreed to transfer Plaintiff to the Renewal Center. On August 23rd 2005, Plaintiff was transferred to the Renewal Center. On January 10, 2006, he was granted early parole.

### C. Liability under 42 U.S.C. 1983

Plaintiff's Complaint seeks to assert liability against Defendant pursuant to 42 U.S.C. § 1983. To state a claim under 42 U.S.C. § 1983, a plaintiff must meet two threshold requirements. He must allege: 1) that the alleged misconduct was committed by a person acting under color of state law; and 2) that as a result, he was deprived of rights, privileges, or immunities secured by the Constitution or laws of the United States. West v. Atkins, 487 U.S. 42 (1988); Parratt v. Taylor, 451 U.S. 527, 535 (1981), *overruled in part on other grounds*, Daniels v. Williams, 474 U.S. 327, 330-331 (1986). Plaintiff's claims are discussed below.

1. Count I - Fourth Amendment

First, Plaintiff claims that Defendants "seizure" of failing to transfer him to the Renewal Center violated his Fourth Amendment rights. The Fourth Amendment provides as follows:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV.

With limited exception not applicable here, the Fourth Amendment's proscription

4

against unreasonable searches does not apply to a convicted prisoner. *See* Hudson v. Palmer, 468 U.S. 517, 526 (1984); Graham v. Connor, 490 U.S. 386, 395 (1989). As Defendants point out, Plaintiff's sentencing orders clearly state that he was confined to the Allegheny County Jail. Because it is undisputed that at the time of the alleged violations Plaintiff was a convicted prisoner, the Fourth Amendment has no applicability. Johnson v. City of Cincinnati, 310 F.3d 484 (6th Cir.2002) (holding that the Fourth Amendment plainly applies to investigatory stops and formal arrests, but does not apply post-conviction). Thus, there can be no Fourth Amendment violation with respect to Plaintiff's confinement in the ACJ. Consequently, Defendants are entitled to judgment as a matter of law with respect to Plaintiff's Fourth Amendment claims.

2. Count II- Due Process

Plaintiff's next claim is that Defendants violated his due process rights by detaining him at the ACJ. The Due Process Clause of the Fourteenth Amendment does not protect every change in the conditions of confinement having a substantial adverse impact on a prisoner. Meachum v. Fano, 427 U.S. 215, 224 (1976). The Due Process Clause shields from arbitrary or capricious deprivation only those facets of a convicted criminal's existence that qualify as "liberty interests." Hewitt v. Helms, 459 U.S. 460 (1983); Morrissey v. Brewer, 408 U.S. 471 (1972). The types of protected liberty interests are not unlimited. The interest must rise to more than an abstract need or desire and must be based on more than a unilateral hope. Rather, an individual claiming a protected interest must have a legitimate claim of entitlement to it. Greenholtz v. Inmates of Nebraska Penal and Correctional Complex, 442 U.S. 1, 7 (1979) (citation omitted).

Thus, the threshold question presented by Plaintiff's due process claims is whether Defendants' actions impacted a constitutionally-protected liberty interest. A liberty interest may

arise either from the Due Process Clause itself, or from a statute, rule, or regulation. Hewitt, 459 U.S. at 466. A liberty interest inherent in the Constitution arises when a prisoner has acquired a substantial, although conditional, freedom such that the loss of liberty entailed by its revocation is a serious deprivation requiring that the prisoner be accorded due process. Gagnon v. Scarpelli, 411 U.S. 778, 781 (1973). Interests recognized by the Supreme Court that fall within this category include the revocation of parole, Morrissey, 408 U.S. at 471, and the revocation of probation, Gagnon, 411 U.S. at 778. The Due Process Clause, however, does not create an inherent liberty interest to remain in or be transferred to any particular prison. *See* Meachum v. Fano, 427 U.S. 215, 225 (1976). *See also* McKune v. Lile, 536 U.S. 24, 39 (2002) (noting that "It is well established that the decision where to house inmates is at the core of prison administrators' expertise."). Accordingly, Plaintiff can succeed under the Due Process Clause only if state law or regulation has created a constitutionally-protected liberty interest in his confinement at Renewal.

The record evidence clearly shows that Plaintiff was sentenced to confinement at the ACJ and was permitted alternative housing. Thus, it does not appear that Plaintiff could have a reasonable expectation that he would be confined at Renewal.

Notwithstanding, Plaintiff points out that under 42 Pa.C.S. § 9721(a), a court may choose among various sentencing options, such as total confinement, partial confinement, probation or intermediate punishment. A sentence of intermediate punishment is a sentencing alternative available in lieu of a sentence of partial or total confinement. 42 Pa.C.S.A. § 9721(6). A term of intermediate punishment is governed by statute:

> § 9763. Sentence of intermediate punishment
>
> (a) General rule.-In imposing a sentence of intermediate punishment,

> the court shall specify at the time of sentencing the length of the term for which the defendant is to be in an intermediate punishment program established under Chapter 98 (relating to county intermediate punishment) or a combination of intermediate punishment programs. The term may not exceed the maximum term for which the defendant could be confined and the program to which the defendant is sentenced. The court may order a defendant to serve a portion of the sentence under section 9755 (relating to sentence of partial confinement) or 9756 (relating to sentence of total confinement) and to serve a portion in an intermediate punishment program or a combination of intermediate punishment programs.

42 Pa.C.S.A. § 9763(a).

While this statute does appear to allow the court to impose a sentence of intermediate punishment, Plaintiff's sentencing order clearly provides that he was sentenced to a term of from one year, one day to two years and two days in the Allegheny County Jail with permission granted for alternative housing. Under these circumstances, the Court agrees with Defendants that, assuming Plaintiff did have a liberty interest to he housed at Renewal, Defendants are entitled to Qualified Immunity.

Government officials performing discretionary acts enjoy qualified immunity from section 1983 actions when their conduct does not violate "clearly established" statutory or constitutional rights of which a "reasonable person" would have known at the time the incident occurred. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). In Saucier v. Katz, 533 U.S. 194 (2001), the Supreme Court clarified the two-step qualified immunity inquiry. In deciding whether a defendant is protected by qualified immunity, a court first must determine whether, "[t]aken in the light most favorable to the party asserting injury, ... the facts alleged show the officer's conduct violated a constitutional right." Id. at 2156. If the plaintiff's factual allegations do add up to a violation of the plaintiff's federal rights, then the court must proceed to determine whether the right

7

was "clearly established," *i.e.*, whether the contours of the right were already delineated with sufficient clarity to make a reasonable officer in the defendant's circumstances aware that what he was doing violated the right. *Id*. At the first step, the inquiry is whether the facts alleged constitute a violation of the plaintiff's rights. At the second step, the question is whether the defendant could nonetheless have reasonably but erroneously believed that his or her conduct did not violate the plaintiff's rights. "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id*. at 2156. In so holding, the Supreme Court rejected the approach taken by the Ninth Circuit and other courts to deny an officer's claim of qualified immunity any time there was a material issue of fact. The Saucier Court reiterated that it is very important that the officer is on notice his conduct would be unlawful under the circumstances, and if the officer does not have such notice, summary judgment based on qualified immunity is appropriate. *Id*. at 2156-57 (citations omitted). "The concern of the immunity inquiry is to acknowledge that reasonable mistakes can be made as to the legal constraints on particular police conduct." *Id*. at 2158.

Applying the Saucier analysis to the facts at bar, the relevant inquiry is whether it would have been clear to Allegheny County officials that their conduct in keeping Plaintiff confined at the ACJ was unlawful. *See also* Giuffre v. Bissell, 31 F.3d 1241, 1255 (1994) ("The ultimate issue is whether, despite the absence of a case applying established principles to the same facts, reasonable officers in the defendants' position at the relevant time could have believed, in light of what was in the decided case law, that their conduct was lawful.") (quotation omitted). With respect to the circumstances presented at bar, this Court has not discovered any case demonstrating a clearly established rule prohibiting Defendants from acting as they did. Nor does it seem unreasonable in

8

light of the specific langauge of the sentencing order. Thus, Defendants are entitled to qualified immunity because reasonable officials in the Defendants' position at the relevant time could have believed that their conduct would be lawful

Moreover, if officers of reasonable competence could disagree on the issue, immunity should be recognized. Malley v. Briggs, 475 U.S. 335, 341 (1986). It is clear from the record that reasonable officers in the Defendants' position could find their conduct in confining Plaintiff at the ACJ to be objectively reasonable and, hence, lawful. It is apparent that officers of reasonable competence could at least disagree as to whether such conduct was reasonable. As such, Defendants are protected from Plaintiff's Due Process claim under the doctrine of qualified immunity.

3. State Law Claims

In Count III, Plaintiff makes state law claims of violations of the Pennsylvania Constitution. A federal court has "supplemental jurisdiction" over claims that are "part of the same case or controversy" as a claim over which the court has original jurisdiction. 28 U.S.C. § 1367(a). Subsection 1367(c) authorizes a federal court to decline jurisdiction over state claims even though the court has federal jurisdiction when:

1. the claim raises a novel or complex issue of State law;

2. the claim substantially predominates over the claim or claims over which the district court has original jurisdiction;

3. the district court has dismissed all claims over which it has original jurisdiction; or

4. in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. §1367(c).

When "the claim over which the district court has original jurisdiction is dismissed

before trial, the district court must decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so." Borough of West Mifflin v. Lancaster, 45 F.3d 780, 788 (3d Cir. 1995). This Report recommends granting Defendants' Motion for Judgment on the Pleadings. Moreover, it appears that Plaintiff's state law claims are barred under the Pennsylvania Political Subdivision Tort Claims Act, 42 Pa. Cons. Stat. §§ 8541, *et seq*. See Odom v. Borough of Taylor, 2006 WL 3042974, *11 (M. D. Pa. Oct. 24, 2006). It follows that the Plaintiff's state law claims should be dismissed as considerations of judicial economy, convenience, and fairness to the parties do not provide an affirmative justification for retaining jurisdiction. *Accord* Lovell Manufacturing v. Export-Import Bank of the U.S., 843 F.2d 725, 734 (3d Cir. 1988).

### III. CONCLUSION

It is respectfully recommended that Defendants' Motion for Judgment on the Pleadings (doc. no. 20) be granted.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Local Rule 72.1.4 B, the parties are allowed ten (10) days from the date of service to file written objections to this report. Any party opposing the objections shall have ten (10) days from the date of service of objections to respond thereto. Failure to timely file objections may constitute a waiver of any appellate rights.

February 19, 2008

Lisa Pupo Lenihan
U.S. Magistrate Judge

cc. The Honorable Nora Barry Fischer
United States District Judge

all counsel of record